PITKIN *against* PITKIN and others:

#### IN ERROR.

*A.*, *B.* and *C.*, being partners in a manufacturing business, *A.* made his will, by which he directed his interest in this establishment, *viz.* the buildings, machinery, stock, privileges and profits thereof, to be continued therein, for the term of four years after his decease; and that at the expiration of that term, this property and the profits accruing thereon, together with all the testator's other estate, real and personal, should be divided and distributed to *D.* and others. *B.*, the executor of *A.*, after *A.*'s death, carried on the business, in the partnership name, for the term specified. It proved to be a losing concern. A large sum was due from *A.*'s estate to the company beyond his share of the partnership property. A large sum was also due from the company to *C.*, who had paid a part, and would be obliged to pay the residue, of the outstanding debts of the company, which were considerable in amount; *B.* having failed and absconded. Previous to the expiration of the four years, the time limited by the court of probate, for the exhibition of claims against the estate of *A.*, had expired, and the executor had proceeded in the settlement of the estate without reference to the partnership fund, and had caused distribution to be made according to the provisions of the will. On a bill in chancery, brought by *C.* against the executor and devisees of *A.*, seeking satisfaction of his claims out of the general assets of *A.*, it was held, 1. that the partnership creditors had no lien on the estate in the hands of the devisees, by reason of their right to participate, eventually, in the profits of the trade; 2. that the general assets were not liable to the plaintiff's claim, by virtue of the testator's last will; and 3. that the plaintiff's remedy was not in chancery, but by a demand on the executor, to be pursued like other claims of a general nature against the testator's estate.

THIS was a bill in chancery, brought by *Samuel Pitkin* against *Joseph Pitkin* and others, stating the following case. In 1817, and previously, *Samuel Pitkin,* the plaintiff, *Stephen*

At the death of *Stephen Pitkin,* the partnership was indebted to sundry persons ; and some of the debts were not paid until after the lapse of the time limited for the exhibition of claims.

No settlement or adjustment of the partnership accounts, the bill averred, was, or could be, made, within the prescribed period of four years. The partnership was a losing concern. At the commencement of this suit, debts, considerable in amount, were due to and from the company; and a large sum was due from *Stephen Pitkin's* estate to the company over and above his share of the partnership property. To the plaintiff there was due from the partnership the sum of 4,000 dollars, a considerable part of which ought to come from said estate. *Joseph Pitkin* has assigned his property, and left the state, without settling the partnership accounts ; and the plaintiff has paid a part, and will be obliged to pay the residue of the outstanding company debts.

The bill prayed for an adjustment of the partnership

accounts, and a sale of so much of the real estate of the testa- *Hartford,* tor as should be necessary to pay the plaintiff's demand, and June, 1829. the testator's proportion of the partnership debts; or for such other equitable relief as was adapted to the nature of the case.

The parties joined in a demurrer to the bill; which the court adjudged to be insufficient; and then, by motion in error, the case was brought before this court for revision.

Pitkin
*v.*
Pitkin.

*Sherman,* for the plaintiff in error, contended, 1. That the estate of *Stephen Pitkin* was liable for the debts of the partnership during the four years of its continuance after his death. There are two classes of investments in trade after the decease of the testator. The first is where a specific limited sum is to be put into the concern, or continued in it, and the residue of the estate is otherwise disposed of. In relation to this class, it has been decided, that only the property directed to be embarked in the trade, shall be answerable to the creditors of the trade. The case of ex parte *Garland,* 10 *Ves.* jun. 110. belongs to this class. There the testator, after giving the bulk of his property to trustees for certain purposes, directed his trade to be carried on by his widow, until his trustees should think proper to establish his sons or either of them therein; and that as long as the business should be carried on by her, the profits thereof should be applied for her own use, and for the maintenance and education of his children. He then directed 600*l.* to be paid by his trustees to her out of his personal estate, for the purpose of enabling her to carry on the business; and appointed her and the other trustees his executors. After the death of the testator, she carried on the business for a while, and then became bankrupt; and it was very properly decided, that the general assets beyond the amount embarked in the trade, were not liable. The extent to which the estate was concerned in the trade, was expressly *limited* by the testator; and he had a right to make such limitation. This was *severed* from the residue of his estate, which was otherwise disposed of. He directed the portions to be paid *immediately,* not intending to subject them to the fortunes of the trade. The second class of cases, is where there is no limitation, but the whole estate is concerned in the trade. There the whole estate becomes a partner, and is liable to contribute for losses. The portion of every legatee and devisee is affected by the results of the trade. Such is the present case. The

testator intended that *all* the estate should be concerned in the trade. There was to be no distribution until after the dissolution of the concern; and then the portions were to be paid, with the *profits* accrued. If the estate were to have the profits, it must be liable for the losses. Having a right to participate in the profits, it became a partner.

2. That this case is within the jurisdiction of a court of chancery. This is not an application by an executor for aid in the settlement of the estate, but by a creditor for the payment of his debt. The objection that the relief sought may disturb the distribution, has no weight. The plaintiff's claim did not accrue until after the expiration of the four years, which was long after the time limited for the exhibition of the claims. If distribution had been previously made, the plaintiff, as creditor, was not party to it; and it cannot affect him. A creditor has nothing to do with the distribution. Suppose the testator had given a bond that a bridge should stand ten years, and then died; would this prevent distribution; and would not a claim on such bond accruing after distribution, entitle the party to go into chancery against the distributees? *Booth* v. *Starr*, 5 *Day*, 419.

*W. W. Ellsworth* and *Toucey*, contra, contended, 1. That the plaintiff had no equity. By the death of *Stephen Pitkin*, the partnership, generally, was dissolved. Beyond that period it could not be continued, in any form, or to any extent, except by the express provisions of the will, which are not to have effect beyond their fair import. Such part of the testator's estate, as he directs to be employed in trade after his death, will be subject to the fortunes of that trade, and nothing more. Now, in this case, the testator directed *a specific portion* of his estate, *viz. his interest in the hat manufactory*, consisting of "the buildings, machinery, stock, privileges and profits thereof," to be continued in the business, for the term of four years after his decease; and the residue of his estate he gave directly to certain devisees. The distinction claimed by the counsel for the plaintiff, is, therefore, inapplicable to the *facts* disclosed. Admitting the soundness of the distinction, the case falls within the first class, and is governed by ex parte *Garland*, 10 *Ves.* jun. 110. If, according to that decision, "only the property declared to be embarked in the trade, shall be answerable to the creditors of the trade," and the general

assets beyond that fund are not liable, the plaintiff has no claim. The reception of property under a will, not part of the fund directed to be put into trade, does not make the receiver liable in respect of the fund in trade. That fund alone is in partnership. Ex parte *Richardson*, 3 *Mad.* 138. S. C. cited 8 *Com. Dig.* 609. *pl.* 12. (*Hammond's ed.*)

2. That the plaintiff's remedy, if he has any, is not in chancery. He says he has a claim against *Stephen Pitkin's* estate. Then why should he not go, like other creditors, to the court of probate, and there get his claim allowed? Why should it not pass the usual ordeal? In this view of the subject, it is immaterial whether distribution has been made, or not. But it appears from the bill, that distribution has been made; and a decree here would disturb that distribution. It is now *res adjudicata*.

HOSMER, Ch. J. To the determination below it is made an objection, that the relief requested should have been granted, inasmuch as the general assets of the deceased are liable to the plaintiff. On the other hand, it has been insisted, that the plaintiff has no claim on the general assets, but that his only remedy is against the executor of the deceased.

In respect of the first point for consideration, that is, whether the general assets of the testator are liable to the plaintiff, the case has been argued for him on the principle, that although the devisees, strictly speaking, are not partners, yet that an interest in the profits of the trade subjects the estate in their hands to a lien in favour of the partnership creditors, and of the plaintiff, as if they were partners.

To this argument the answer is direct and obvious.

If the devisees are partners, they are suable in that capacity, and are to be treated, in all respects, as if they sustained that character. This, at once, terminates the specific relief requested, on the estate in their hands.

But that they are not partners, is indisputably clear. The principle that he who enjoys a part of the profits of a partnership, is liable to the creditors of the firm, although unquestionable as a general rule, yet like other general rules, is limited by the reason on which it is founded. By operation of law, in respect of creditors, a person who is not a partner in fact, but who is benefitted by the profits of a partnership, is clothed with that character, when he takes from them a part of that

*Hartford, June, 1829.*

Pitkin
*v.*
Pitkin.

*Hartford,* fund, on which they placed reliance for the payment of their
*June, 1829.* debts.  Were it otherwise, the partnership creditors would be
injured, and the person alluded to would receive usurious inte-
rest for his capital, without its being attended with any risk.
*Waugh* v. *Carver,* 2 *H. Bla.* 235. 246. *Grace* v. *Smith,* 2 *Bla.
Rep.* 998. 1000.  *Cooper* & al .v. *Eyre* & al., 1 *H. Bla.* 37. 43.
*Mc Iver* & al. v. *Humble* & *al.,* 16 *East* 169. 174.  *Cheap* v.
*Cramond,* 4 B. & A. 670.  *Gow on Part.* 6. 13. 15.  *Chitt.* on
*Cont.* 68.  But all this is inapplicable to the present case.  In
this case, the capital is at hazard ; and therefore, the reasons
derived from the possibility of usury, do not apply ; and as to
the diminution of the fund to the disadvantage of the creditors,
this is impossible.  The devisees under the will are entitled to
neither capital nor profits, until the dissolution of the partner-
ship.  The company concerns must first be attended to ; and
after the extinguishment of all the debts and expenses, the de-
visees are to come in for their share of the net surplus, and
not before.  Hence, the inapplicability of the principle ad-
vanced, to this case, under its peculiar circumstances, is per-
fectly clear ; the devisees are in no respect partners, or *quasi*
partners ; nor from this source is there any ground to infer a
lien upon the general assets of the deceased.  I think it equally
obvious, that if there were a lien in favour of partnership cre-
ditors, it would not extend to the claim of the plaintiff.  He
trusted the partners personally and the fund ; but with open
eyes and full knowledge of all the facts, he did not credit the
devisees, nor the estate devised ; nor has he any claim upon
the latter, unless on another principle, which will now be con-
sidered.

2. Are the general assets of the deceased liable to the plain-
tiff's demand, *by virtue of the testator's last will ?*  By the
devise, they are not  specifically pledged.  The question then
arises, whether by operation of law, on a  true construction of
that instrument, they are made liable to the claim advanced.
I take it to be established law, that they are not.

The case of *Hankey* v. *Hammond,* 1 *Cooke's Bank. Law,* 67.
would seem to lend some aid to the principle advanced by the
plaintiff ; but this case, the first comprising the doctrines con-
tended for by the plaintiff, was overruled by Lord *Eldon,* in
that of *Ex parte Garland,* 10 *Ves.* jun. 110.  This determina-
tion, in the most lucid and able manner, establishes the doc-
trine, that under the bankruptcy of an executor or trustee

*Pitkin
v.
Pitkin.*

directed by the last will of a testator, to carry on a trade, and *Hartford,* a limited sum to be paid by the trustees of his estate for that June, 1829. purpose, the general assets beyond that fund are not liable. 1 *Madd. Chan.* 504. In this case it was decided, that the executor was to continue the partnership for four years, on the fund already invested, and beyond this, that there existed no liability on the general assets.

The principles on which the case *Ex parte Garland* is founded, are expressed by Lord *Eldon,* at considerable length, and with great force. I do not mean to recite them ; but in a concise form, shall refer to those, which, in my opinion, are most material.

To hold the general assets to be liable, would be attended with great inconvenience. It would prevent their distribution for a long period, or disturb a distribution already made. The condition of the executor, it is true. may be attended with considerable hardship, as he becomes liable to the creditors, in his person, to the extent of all his property. *Wightman* v. *Townsend,* 1 *Mau. & Selw.* 412. But in this condition he voluntarily places himself, in the free exercise of his judgment, and on full knowledge of the facts, adventures to assume this sort of responsibility.

In respect of the creditors of the partnership, they are divisible into two classes ; those who were such before the testator's death, and those who became such afterwards. With respect to the first class of creditors, they have the power and means of calling forth, after the testator's death, the whole of his property, in discharge of their demands ; and this is all the security they can wish. And in regard to those comprising the second class, who become creditors subsequent to the testator's death, in the first place, they may determine whether they will be creditors. In the next place, they have the whole fund embarked in trade to look to. Superadded to this, they have the personal responsibility of the individual with whom they deal, the only security in ordinary transactions of debtor and creditor.

It is, therefore, manifestly less inconvenient, to say, that those who deal with the executor, must take notice, that the testator's responsibility is limited by the authority given to the executor, than to assert, as the executor is authorized to carry on the trade, that all the other objects of the will must, at any

distance of time, stand still, or that ʽeventually they may be subjected to the claims of the partnership creditors.

On these principles, it was concluded by Lord *Eldon,* that it would be unjust to consider the creditors of the company as having a lien on the testator's general assets ; and as a precedent extremely inconvenient to the interests of mankind.

As the creditors of the partnership have no claim on the general assets of the deceased, with much less force of argument can a claim be maintained in favour of the plaintiff.

On the death of the testator, the partnership was by law dissolved. *Gow* on *Part.* 269. *Griswold* v. *Waddington,* 15 *Johns. Rep.* 57. 82. S. C. in error, 16 *Johns. Rep.* 438. 490. *White* v. *Union Insurance Company,* 1 *Nott. & McCord* 559. With open eyes on this fact, and with full knowledge of his responsibility and of his legal claims on *Joseph Pitkin* only, the plaintiff thought proper to go on, and incur the further hazard of the partnership. He knew, (for he must be presumed to know the law) that *Joseph Pitkin* was substituted a partner for the deceased ; and that the fund employed in the partnership, was, in addition to *his* responsibility, his only resource. With respect to the indebtedness of the deceased, if he was indebted at the time of his death, the plaintiff, after payment, might have contribution from the deceased's estate, by a claim made on his executor. But even in support of such a demand, no ground is laid in the bill. It is only averred, that the company, at the death of *Stephen Pitkin,* was indebted to various persons,—in what sum is not mentioned ; and that the plaintiff has been obliged to pay *a part* of the debts of the partnership, without stating to what amount. It is perfectly campatible with all the allegations made in the bill, that at the death of the testator, the partnership was indebted a dollar only ; that the funds in the plaintiff's possession comprised many hundreds ; and that the only debts paid by him amounted to an inconsiderable sum, and have been paid out of the partnership funds.

3. It is scarcely necessary to observe, that the plaintiff's remedy, (if one exists) is not by an application in chancery, to subject the testator's general assets ; but it is by a demand on the executor of *Stephen Pitkin.* He is obliged by law to the extent of all the deceased's estate, to satisfy every debt against it. All the debts of a deceased person constitute demands on his executor. Were there a specific lien, either on a part or on all the testator's property, it might be enforced, by an ap-

propriate suit; but here there is none. The claim, if any, is <span style="float:right">*Hartford,*</span> of a general nature, and to be instituted, as other claims are, <span style="float:right">June, 1829.</span> against the executor of *Stephen Pitkin.*

<div style="float:right">Pitkin<br>*v.*<br>Pitkin.</div>

The Court, then, has come to this result ; that the general assets of the deceased, are not liable to the plaintiff's claim, in any other sense, than that they are responsible eventually to all his creditors, through the medium of a demand made on his executor. Of consequence, in the judgment of the court below there is no error.

PETERS, DAGGETT, and BISSELL, Js. were of the same opinion, the former suggesting some doubts.

WILLIAMS, J. gave no opinion, having been of counsel in the cause.

<div style="text-align:right">Judgment affirmed.</div>