Cook *v.* The Administrator, etc., of Rogers.

*(Circuit Court, S. D. Ohio. February, 1880.)*

1. Partnership—Estate of Deceased Partner.—Partnership agreement and will of a deceased partner construed, and *held* not to render the general assets of the estate of the decedent liable for partnership debts contracted after his death.

On demurrer to the answer. The issues presented by the pleadings are fully stated in the opinion.

*John W. Herron,* for plaintiff.

*J. F. Baldwin,* for defendant.

Swing, D. J. This suit is brought to recover of the defendant the amount of two promissory notes—the first, given by the Sectional Dock Company to the order of Thomas P. Morse & Co. for $12,000, dated June 4, 1873, and payable at 90 days; the second, given by Thomas P. Morse and John D. Daggett to the Sectional Dock Company for $4,000, dated April 4, 1873, and payable at 90 days,—both of which were indorsed, and of which it is alleged that the plaintiff is now the holder and owner.

The petition alleges, in substance, that on the seventeenth day of November, 1857, Rowland Ellis, Jr., Patrick Rogers, John Daggett, Thomas Morse, and Mary Thomas formed a copartnership in the city of St. Louis, in the state of Missouri, for the purpose of carrying on the business of docking and repairing steamboats and other vessels in said city; that it was provided in the articles of copartnership that in the event of the death of either party to said agreement said copartnership should not be dissolved, but the interest of said deceased partner should be continued and represented by the

legal representatives of said deceased partner; that the name should be "The Sectional Dock Company;" that said copartnership carried on business under said agreement until the fifth day of December, 1870, when said Patrick Rogers died, in the city of Cincinnati, leaving a will, which was duly admitted to probate in Hamilton county, Ohio; that by the terms of said will Robert C. Rogers was appointed executor of his estate, and was directed to continue the interest of decedent in the said Sectional Dock Company, at St. Louis, until the same could be disposed of; that said Robert C. Rogers did continue the said business as executor, representing the interests of the estate of said Patrick Rogers in said partnership until his death, when the defendant, Joseph Rogers, was appointed administrator of said estate, with the will annexed; that said Robert C. Rogers, as executor of said Patrick Rogers, deceased, took possession, by virtue of the will of Patrick Rogers, of the interest of said estate in the Sectional Dry Dock Company, at St. Louis, and of the Marine Railway & Dry Dock Company, of Cincinnati, and of the Louisville & Cincinnati Mail Line Company, and that he collected dividends therefrom, and that the estate realized large sums of money from the second and third properties so mentioned, and still holds interests therein undisturbed, and that whatever sums have been realized by said estate from either of said properties is liable for the debts contracted in carrying on the others, and especially for the claims sued on in this case; that by the laws of the state of Missouri, where said copartnership was formed, and where the notes were executed, the liability of partners is joint and several, and, therefore, each partner is liable separately upon a debt of said firm.

To this petition the defendant has filed an answer containing three separate defences, the second of which is only necessary to be noticed, and is as follows:

"For a further defence to said first cause of action, he says it is true that prior to the fifth day of December, 1870, said Patrick Rogers was a partner in the copartnership known by the name of the Sectional Dry Dock Company named in the petition.

"He says it is true that the persons named in the petition entered into written articles of copartnership on said seventeenth day of November, 1857, and that said written articles of copartnership contained the following provision, to-wit: 'It is further agreed that, in the event of the death of either party to this agreement, this copartnership shall not on that account dissolve, but the interest of such deceased party may be continued and represented by the legal representatives of said deceased party, or otherwise disposed of by them.'

"He says that this is the only agreement relating to said partnership. He admits the death of Patrick Rogers, the execution and probate of his will, and the appointment of Robert C. Rogers as executor, and of defendant as administrator, with the will annexed; that the only clause in said will authorizing the continuance of said copartnership after the testator's death is as follows: 'It is my will and direction that my share and interest as one of the partners in the Louisville & Cincinnati Mail Line Company, and also my share and interest as one of the partners in the Marine Railway & Dry Dock Company, of Cincinnati, and also my share and interest as one of the partners in the Sectional Dry Dock Company, of St. Louis, Missouri, shall not cease nor said partnership be determined by reason of my death, but that my share and interest in each of said partnerships shall continue and be kept up and represented by the executor of this, my will, in my stead, until such time as in his judgment it shall be most advantageous for my estate to sell out or settle up and close the said shares and interests respectively, and to that end I do hereby fully authorize, empower, and direct the executor of this my will to hold, manage, and represent all my shares and interests in said companies, respectively, for the benefit and use of those who shall be entitled to my estate, until such time as in his discretion and judgment it shall be most advantageous for my estate to sell or close and settle the same, and then to sell out my shares and interests in said companies, or either of them, or settle and close the same by agreement with the partners, whichever he considers best,

and upon such terms and for such price as he shall deem proper and sufficient.' "

A similar provision is made in said will as to the testator's share of stock in the Niles Works.

Said will next makes provision for the testator's sister, 'Letitia McNamara, and then follows the residuary clause in said will, as follows:

"Subject to the foregoing provisions, and to the dower, distributive share, and allowance for my wife provided by law, ·I give and devise to each of my five children, Robert, Sarah, Thomas, Joseph, and Fenton, one-sixth part, respectively, of all the residue of my estate, to them and their respective heirs, subject, however, to the following deductions: From the share of Robert, $6,750, being the amount heretofore advanced to him by me; from the share of Sarah, $6,750, being the amount advanced to her; and the other and remaining equal one-sixth part thereof, less the sum of $5,000 heretofore advanced to my deceased daughter, Mary, I give and devise to my said son, Thomas, and his heirs, to hold the same in trust for the two children of my said deceased daughter, Mary, until they become of age, and upon their becoming of age to convey to each, respectively, the equal one-half of said one-sixth part of my estate, and in the meantime to apply the income of their respective shares to their proper education and maintenance, so far as necessary, and the surplus, if any, to invest and hold upon the same trust and use."

. Said will also provides for the payment of the testator's debts, and authorizes his executor to spend money to purchase, for the benefit of his estate, the fee-simple title to the Merchants' Hotel property, in Cincinnati, and to complete all contracts of the testator for the purchase or sale of real estate; that the ·clauses of said will quoted and referred to are all the parts of said will relating to the disposition of the testator's estate. And the defendant says that the said executor had no power, under said will, to invest any part of the estate of said testator, in said copartnership, the Sectional Dock

Company, except that which was so invested in the life-time of said testator and that said will does not render the estate of the testator not already invested in said partnership liable to the payment of any debts of said partnership contracted after said testator's death. He says that said will limits the responsibility of said testator's estate for debts of said partnership to be contracted after his (said testator's) death to that part of said estate already embarked in said partnership at the death of said testator, and he denies that said estate is liable to the plaintiff beyond the amount of its property and assets embarked in said copartnership. To this point the plaintiff demurs generally. Two questions are involved in the determination of this demurrer: *First*, by virtue of the contract of partnership and the provisions of the will, did the general estate of the testator become liable for debts contracted by the partnership after the death of the testator? *Second*, if it did not, did that part of the estate belonging to and arising out of other partnerships, which it is claimed the executors were authorized to continue, become liable for the debts of this partnership?

Did this liability of the general estate arise out of the terms of the agreement creating the partnership? The agreement was not for any definite number of years; there could be no question, therefore, that the death of either partner, of itself, would dissolve the partnership; but, even if it had stipulated for duration of a particular period, the death of either partner within that period would have worked its dissolution, unless expressly stipulated that it should not have that effect.

This agreement provides simply against that result by saying that "in the event of the death of either party to this agreement this copartnership shall not, on that account, be dissolved, but the interest of such deceased party may be continued and represented by the legal representative of said deceased party, or otherwise disposed of by them." It does not provide that it shall be continued notwithstanding the death, but that it may be. There is no binding obligation upon the part of Patrick Rogers that this copartnership should con-

tinue after his death; it does not in terms fix and extend any liability upon him or his estate after his death. And it seems to me very clear that if he had died intestate, and his administrator had undertaken to have carried on this partnership with the general assets of the estate, he could not, under this clause, have been justified in doing so. It would have been the exercise of a discretion and power which, as against the individual creditors and the heirs of the intestate, could not have been supported.

Does, then, the will, in connection with this agreement, or without it, give such power as to make his general estate liable? The clause of the will by which it is claimed this result is produced is: "It is my will and direction that my share and interest as one of the partners in the Louisville & Cincinnati Mail Line Company, and also my share and interest as one of the partners in the Marine Railway & Dry Dock Company, and also my share and interest in the Sectional Dry Dock Company, of St. Louis, Missouri, shall not cease, nor said partnership be determined, by reason of my death, but that my share and interest in each shall continue and be kept up and represented by the executor of this my will, in my stead, until such time as in his judgment it shall be most advantageous for my estate to sell out and settle up and close up the said shares and interests respectively. And to that end I do hereby fully authorize and empower and direct the executor of this my will to hold, manage, and represent all my shares and interest in said companies respectively, for the benefit and use of those who shall be entitled to my estate, until such time as in his discretion and judgment it shall be most advantageous to sell or close and settle the same, and then to sell out my said shares and interest in said companies, or either of them, or settle and close the same by agreement with the partners, whichever he considers best, and upon such terms and for such price as he shall deem proper and sufficient."

The testator then provides for a sister, and then provides that "subject to the foregoing provisions, and to the dower, distributive share, and allowances for my wife provided by

law, I give and devise to each of my five children, Robert, Sarah, Thomas, Joseph, and Fenton, one-sixth of all the residue of my estate," and to the children of a deceased daughter one-sixth, subject to certain deductions to be made to some of them for advance payments he had made.

So far as the authority to carry on these several partnerships is provided for by this will, it speaks of his shares and interests in them, and they are to be continued and kept up and represented by the executor until such time as shall be most advantageous to sell them and settle them up; not to continue the business of these firms generally and indefinitely by the use of his general assets, but only to continue the interests which he then had in them, and that only to such times as they could be most advantageously sold or closed up. But if it were doubtful, from the language used in this clause, whether the testator intended to limit the carrying on of this business to the funds already embarked in it, the residuary clause of the will, when taken in connection with this, seems to show such intention, for this disposes of all the balance of his property to his children and grandchildren.

Mr. Lindley, in his work on Partnership, 1105, says: "It is now, however, clearly settled that the extent of the liability of the testator's estate does not exceed the amount authorized by him to be employed in the trade or business directed by him to be carried on." And again, on the same page, he says: "A general direction to carry on a business in which a testator was engaged does not authorize the employment for that business of more of his assets than was embarked in that business when he dies." Justice Story, in delivering the opinion of the supreme court of the United States in *Burwell* v. *Mandeville, Ex'r,* 2 Howard, 560–577, says: "And this leads us to remark that nothing but the most clear and unambiguous language, demonstrating in the most positive manner that the testator intends to make his general assets liable for all debts contracted in the continued trade, would justify the court in arriving at such a conclusion, from the manifest inconvenience thereof, and the utter impossibility of paying off the legacies bequeathed by the testator's will,

or distributing the residue of his estate, without, in effect, saying at the same time that the payments may all be recalled if the trade should become unsuccessful or ruinous. Such a result would ordinarily be at war with the testator's intention in bequeathing such legacies and residue, and would or might postpone the settlement of the estate for half a century, or until long after the trade or continued partnership should terminate."

Mr. Parsons, in his work on Partnership, treats the continued partnership as a new partnership, and on page 454 says: "So the creditors of the new partnership have no claim whatever upon and no interest in the general assets of the deceased, or any part of them, but that which he expressly placed in the new partnership." And to the same effect is the doctrine of *Ex parte Garland*, 10 Vesey, 109–110; *Pitkin* v. *Pitkin*, 7 Conn. 307; and *Lucht, Adm'r,* v. *Behrens,* 28 O. S. 231.

I think, therefore, that neither by the agreement nor will does the law make the general assets of the estate liable for the debts of this partnership contracted after the death of the testator. Does, then, the provision of the will in regard to the other partnerships, and the fact that the executor collected dividends, and that the estate has derived large sums of money from them, make such incomes liable for the debts contracted after the death of the testator by this particular partnership? There may be more difficulty in this proposition, but it seems to me that it can hardly be maintained. It is true that, for the time being, the shares and interest in these partnerships are placed in the management of the executor; but they are separate and distinct partnerships—separate and distinct in their formations and purposes, composed, so far as we know, of separate and distinct members, and there is nothing in the pleadings which shows that by their articles of copartnership there was any provision by which they should be continued, notwithstanding the death of any of its members. Neither is there anything in the pleadings which shows that these partnerships are solvent or insolvent, or whether there may be outstanding debts against them. If they are insolvent, or

there be debts of them unpaid, it would be more equitable that the separate income of each should be applied to the payment of its separate indebtedness. But, aside from this, the provisions of the will are that the shares and interest of the testator in them should be continued, not generally, but until they could be most advantageously disposed of and settled up. And, although the term "kept up" is used by the testator, it does not seem from the will that it was the intent of the testator that they should be kept up by his general estate, or by taking the profits and dividends arising from either and appropriating them to the payment of the losses and debts of the other. And, unless it was his intent that this should be done, I do not think that the mere fact that there had been some dividends received by the estate of a deceased partner from one or more of these partnerships would entitle a creditor to a judgment against his estate upon an indebtedness contracted by another partnership long after his death. Parsons on Part. 454; *Ex parte Garland*, 10 Vesey, 109–110. Persons dealing with partnerships are presumed to look to the partnerships themselves, and not to the estates of its deceased members, for the payment of debts contracted after such decease.

I think, therefore, that upon this ground the demurrer cannot be sustained.

The demurrer is therefore overruled.