# Appeal of Leaf et al.

1. The current profits of a partnership are personal property, and upon the death of a partner descend as such under the intestate laws, whether the property of the firm be real or personal.

2. During the continuance of a partnership, all the property of the firm, whether in fact realty or personalty, must be regarded for purposes of descent as personalty.

3. Re-conversion of such personalty into realty will not take place until the dissolution of the firm and a settlement of its accounts.

4. Stipulations in articles of copartnership for the continuance of the firm after the death of a member and until the consent of all the partners is given to a dissolution, are valid and binding, and on the death of an individual partner will prevent a dissolution.

5. Under such stipulations, until all the partners consent to a dissolution of the firm, and until a settlement of its accounts is made, the interest of a deceased partner, and the income accruing therefrom, are personalty and descend as such under the intestate laws.

6. Foster's Appeal, 24 P. F. Smith, 391, distinguished.

March 3, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

CERTIORARI and appeal from the Court of Common Pleas of *Berks county.* In Equity: Of January Term, 1884, No. 232.

This was an appeal of Richard T. Leaf and others from a decree of the said court, sustaining a bill in equity for an account filed by Emanuel V. Gerhart against the said Richard T. Leaf and others, and decreeing that the said defendants' pay the plaintiff the sum of $1,500 with interest. Answers were filed, and the court appointed Daniel H. Wingerd, Esq., examiner and master, whose findings of fact and conclusions of law were as follows:

In 1852, Frederick S. Hunter and others entered into a partnership for the purpose of manufacturing pig iron at Lees-

port, Pa. ' Among the articles of copartnership were the following:

"2. The furnace property in Leesport, real estate in and about Leesport, and all other stocks and properties necessary for the safe and profitable management and enjoyment of the business heretofore purchased for the partnership, or that may hereafter be purchased or constructed for the same, shall be taken and held as partnership personal property."

"6. The firm shall not be dissolved by the death, withdrawal, failure or pleasure of any of its members, nor in any way but by the consent of all the·members thereof. . . . . . In the case of the death of any member, his legal representatives shall hold his property and interest, in the same manner and subject to the same rights and liabilities as the deceased partner held the same, and may sell out and withdraw from the firm, as provided in the case of withdrawal of a partner. By the term legal representatives, is understood and intended the person or persons who may be made such, touching this property, by the last will of the member deceased, or who may become such, under the intestate laws of this Commonwealth."

When this copartnership was first formed, its real estate consisted of what was then known as the Darrah Furnace Stack and several acres of land connected therewith; but other real estate was subsequently purchased from time to time until the entire holdings by the partnership aggregated about 270 acres, upon which are erected houses, barns and various other kinds of buildings, suitable for farming and furnace purposes. All the real estate thus acquired was bought for the use of the partnership, and paid for out of their general funds, to further the interests of the firm, and while much real estate was acquired which was not really needed for the manufacture of iron, properly speaking, some part of each purchase, in the judgment of the partners, was needed, for the better or more convenient management of the main business of the firm; and what was not absolutely necessary for that purpose, was bought with the necessary portion, in order to get that which was needed.

On August 20, 1863, Frederick Hunter died intestate, possessed, inter alia, of a one-fifth interest in said partnership, and leaving surviving him a widow, Mary M. Hunter, and three children, viz., Nicholas .Hunter, Lenora C. Leaf, wife of Richard T. Leaf, and Mary M. Flinn, wife of J. Robinson Flinn. Letters of administration on his estate were duly granted to Wm. H. Clymer, Esq.

On August 22, 1865, the widow of Frederick S. Hunter was married to Emanuel V. Gerhart, the plaintiff, and on July 18, 1866, she died. By her last.will and testament she bequeathed

to the said Emanuel V. Gerhart "all the personal property which I own or am possessed of at the time of my decease, including my share in the 'Leesport Furnace property' in Berks county, Pennsylvania, being one third of one-fifth thereof." The said Emanuel V. Gerhart, her husband, was appointed as executor in the will, and on the 30th day of July, 1866, letters testamentary were issued to him accordingly.

Thereafter dividends declared by the partnership were paid to him from time to time, upon the said one third of one-fifth interest until the last dividend declared on the 8th day of November, 1879, and payable on the 1st day of January, 1880, when the children of Frederick S. Hunter made objection to the payment of the same, as formerly, to the said Emanuel V. Gerhart. This objection was put upon the ground that the widow of Frederick S. Hunter had only a dower interest in the one third of his share in the Leesport Iron Company, and that therefore the same descended to them as his heirs, at her death, and did not pass by her last will to the said Emanuel V. Gerhart, and that therefore said dividend was payable to them as such heirs.

Thereupon the firm declined to pay the said dividends to either of the claimants, and this bill was brought by the said plaintiff against Richard T. Leaf et al., members of said firm or heirs of the said Frederick S. Hunter, to enforce payment of the same to him as the legatee of the widow of Frederick S. Hunter, deceased.

On these facts the auditor reported as follows: The English authorities incline strongly to the doctrine, that real estate held by a partnership and used for its purposes, is converted into personalty, and as such goes to the personal representatives and not to the heir at law: Collyer on Partnership, §§ 114–15, and cases cited in notes. In this country the rule, in many of the states, is held to be different from the English doctrine, though there is conflict of authority on the subject, and in this state the decisions show a decided tendency toward restricting the application of the equitable doctrine of the conversion of realty held by a partnership into personalty, and to admit it only for the accomplishment of equitable results. It is, however, the well settled rule in Pennsylvania, that when real estate is brought into the partnership business, and forms part of its stock, it is considered personalty, and as converted out and out for all purposes of the partnership, except sale and conveyance under the Statute of Frauds: Meily v. Wood, 21 P. F. S., 488; Abbott's Appeal, 14 Wright, 234; Foster v. Barnes, 31 P. F. S., 377; Foster's Appeal, 24 P. F. S., 391.

"In the case before us there can be no doubt that all the real estate acquired by the partnership, both before and after the death of Frederick S. Hunter, formed part of the assets of the partnership, as the recorded agreement so stated; the conveyances are all made *in terms* for the use and benefit of the partnership, and the evidence is that all except the first purchase was paid for out of the profits of the partnership. Certainly then, under the authority of Foster's Appeal, 24 P. F. Smith, 391, and the facts above stated, it must be held that in this case there was an out and out conversion from realty to personalty, to the extent that the real estate held by the partnership was not subject to lien by the creditors of Frederick S. Hunter, or any other individual member of the firm, nor to sale, mortgage, or encumbrance either by him, or any one else who succeeded to his interest in the partnership, but remained liable, first, for the payment of all partnership debts, and secondly, for the payment of any balances which might be due to the other members of the firm. Under the same authority it is equally clear, that had the partnership been wound up and dissolved, upon the death of Frederick S. Hunter, all its affairs settled, and a balance ascertained to be due to his estate, such balance, arising from the real estate, would have been re-converted, as no longer forming a part of the partnership stock, nor required for its purposes, and would have descended to his widow and children, as real estate. But in the case before us the partnership could not be dissolved nor its affairs wound up, by the death of Frederick S. Hunter, and as a matter of fact, it was not wound up nor affected in any way thereby; but on the contrary continued its business just as before his death, and his interest remained in the partnership subject to all its purposes, and was represented by his widow and the guardians of his three minor children, who stood in his stead as partners.

"What then must the interest of Frederick S. Hunter be considered during this continuing partnership with his widow and children, either by their guardian or themselves as members thereof, and with their entire interests subject to the equities of partnership creditors and the other partners— whether realty or personality for the purposes of descent? . . . . . Indeed it does not appear, though the firm paid large dividends, how much would have remained for distribution, either of personality or realty, if the affairs of the firm had been wound up, and certainly all the partnership stock, whether realty or personality in fact, must remain liable, primarily, for all partnership obligations, and be considered personality until all partnership affairs have been fully wound up and settled. In Abbott's Appeal, 14 Wright, 234, the balance

of a fund in court arising from a sale of partnership real estate was awarded to the surviving partners as against the claim of an individual partner in his own right, and as the executor of another deceased partner, on the ground that the affairs of the firm had never been finally settled. See also Foster's Appeal, 24 P. F. S., 391.

"Now applying these principles, as laid down, to the case in hand, we conclude: That as the land formed a part of the partnership stock it was converted out and out, because the objects of the partnership required it, and being converted into personalty in contemplation of law, it could not be re-converted until that partnership was wound up and settled, and until it was finally determined by such settlement, that it was no longer required for the purposes of the partnership. But the partnership in question never has been wound up, and under the terms of the agreement its affairs may not be finally settled for an indefinite period; nor does it appear but that the entire interest of which Frederick S. Hunter died seised, may in the future be, or might at any time heretofore have been, required for the purposes of a final settlement and winding up of the partnership affairs. How then can re-conversion take place until the equities which work the conversion are accomplished and settled? How could this undefined and still undefinable interest in the partnership descend as real estate, and as such, be chargeable with a dower interest and subject to all the possibilities of sale, mortgage, or incumbrance by those entitled to the remainder, without interfering with the equitable rights of partnership creditors and partners, and defeating the very object of conversion? All the partnership property in this case being clearly impressed with the character of personalty, any attempt to withdraw that character from it, during the existence of the partnership or before accomplishing the equitable objects for which the conversion into personalty was effected, would not only defeat those objects, but lead to a state of uncertainty and confusion respecting the rights of partners, creditors and heirs, and would, in the opinion of the master, be contrary to sound legal principles. It may be noticed further that as both the widow and children of Frederick S. Hunter allowed their several interests to remain in the partnership, and thereby became partners under the 6th clause of the agreement above quoted, it seems impossible to escape the conclusion that if their interest, by any mode of reasoning, could be held to be real estate, at any period since the formation of the partnership, re-conversion into personalty must have again taken place, for it will not be pretended that those interests, or any

of the others in the partnership now, may be considered other than as personalty for all equitable purposes.

"As, therefore, the widow took her portion of the interest of Frederick S. Hunter in the partnership as personalty, she took it absolutely, and had the legal right to bequeath it to Emanuel V. Gerhart, the plaintiff, as she did. He, by virtue of the provisions of the 6th clause of the partnership agreement, elected to remain in the partnership and become a partner, and is consequently entitled to be paid his proper share, according to his interest, of all dividends declared by the partnership since the death of the widow, and not yet paid to him."

The master accordingly recommended that the bill be sustained in accordance with the prayer of the plaintiff, and that the court order and decree that the defendants, composing with the plaintiff the co-partnership known as the Leesport Iron Company, do forthwith pay unto the said Emanuel V. Gerhart, plaintiff, his full respective share of the dividends due and payable upon his interest in said co-partnership, to wit, the sum of fifteen hundred dollars ($1,500.00), with interest from the 1st day of January, 1880, and the costs of this proceeding.

Exceptions filed by the defendants to the master's findings of fact and law were dismissed by the court and the report was confirmed. The Court (SASSAMAN J.) entered a decree in accordance with the recommendations of the master. The defendants thereupon took this appeal and certiorari, assigning as error the dismissal of their exceptions, the confirmation of the master's report and the entry of the said decree.

*Geo. F. Baer* and *G. A. Endlich* for the appellants.—We concede that partnership real estate is to be deemed personal property for the purposes of the partnership. The only equitable result to be effected by such fictitious conversion is to protect the creditors of the partnership, and it is not to be extended beyond their exigencies. Thus it at no time gives one partner an implied power to dispose of the whole partnership interest in it. It does not make the land subject to the rule which makes one partner the agent of the firm. It does not allow any partner to sell more than his undivided interest, unless he have from the others a sufficient special authority for the purpose. It does not authorize an administrator, even during the continuance of the partnership, to sell his decedent's share without an order of the Orphans' Court to that effect: Foster's Appeal, 24 P. F. S., 391. In other words, it divests the real estate of its peculiar attributes as such for no other purpose, than to protect the rights of creditors: Greene *v.*

Graham, 5 Ohio Rep., 264; Wilcox *v.* Wilcox, 13 Allen (Mass.), 252; Shearer *v.* Shearer, 98 Mass., 107; Buchan *v.* Sumner, 2 Barb. Ch., 165, 199; Foster's App., 74 Pa. St., 391. Hence none but creditors, or those representing creditors, can invoke the doctrine. Thus, in England, the Crown cannot avail itself of it to deprive a member of a partnership holding real estate of his right to vote as a freeholder, on the ground that the real estate is personal property; Baxter *v.* Brown, 7 M. and G., 199; nor to require probate duty: Custance *v.* Bradshaw, 4 Ha., 315. Nor can the personal representatives invoke the doctrine as against the real, in a proceeding in which the creditors or their rights do not appear: Greene *v.* Graham, 5 Ohio Rep., 264; Wilcox *v.* Wilcox, 13 Allen (Mass.), 252.

In the present case, the rights of creditors are in no wise concerned. It is not an attempt to take anything from the partnership fund, in which respect it is distinguishable from the case of Abbott's Appeal, 14 Wr., 234, cited by the learned master. The consideration of rights of creditors being thus removed from the case, this partnership, for the purposes of the present inquiry, must be treated as settled, its debts paid and its business ready to be resumed by the survivors in conjunction with such parties as may, under the law, be entitled to step into F. S. Hunter's interests. These parties are clearly ascertained, in Foster's App., 74 Pa. St., 391, to be the heirs and not the personal representatives; and this decision is supported by similar ones throughout the United States: Williamson *v.* Fontain, 7 J. Bax (Tenn.), 212; Piatt *v.* Oliver, 3 McLean (U. S.), 27; Wilcox *v.* Wilcox, 13 Allen (Mass.) 252; Shearer *v.* Shearer, 98 Mass., 107; Buchan *v.* Sumner, 2 Barb. Ch., 165, 199; Collumb *v.* Read, 24 N. Y., 505; Fairchild *v.* Fairchild, 64 N. Y., 471; Tillinghast *v.* Champlin, 4 R. I., 173: Robertshaw *v.* Hanway, 52 Miss., 713; Scruggs *v.* Blair, 44 Miss., 406; McAvoy's Est., 12 Phila., 83.

As the result of the foregoing authorities, we contend that the interest of F. S. Hunter in the Leesport Iron Company, which was, in point of fact, an interest in realty, was real estate for the purpose of descent, as between his heirs and personal representatives, and upon his death, intestate, went to the former, subject to a one-third interest for life in the widow. Upon her decease, it went entirely to the heirs.

*Horace A. Yundt*, for the appellee.—Under the general law of partnership, when real estate is brought into the partnership business, it is treated, in equity, as personal estate; there is an out-and-out conversion for all purposes connected with the partnership, except sale and conveyance under the Statute of

Frauds. It is not a mere fiction of the law created for the benefit of partnership creditors, but may be invoked by any person interested. And it continues to be personal estate until the partnership is wound up, and it is no longer required for its purposes: Kramer *v.* Arthurs, 7 Barr., 171; Mining Ass'n *v.* Reed, 30 P. F. S., 50; Moderwell *v.* Mullison, 9 Harris, 259; Erwin's Appeal, 3 Wr., 535; Abbott's Appeal, 14 Wr., 234; Meily *v.* Wood, 21 P. F. S., 494; Foster *v.* Barnes, 31 P. F. S., 384; Foster's Appeal, 24 P. F. S., 399; Du Bree *v.* Albert, 4 Out., 487. Especially is this the case where the partners, as in this case, impress by their written agreements the character of personalty upon their realty. In such case it will be deemed in equity to *all* intents and purposes to be personalty, and will consequently descend as such : Story on Part., § 93; Adams' Equity, *245; Brightly's Eq. Jur., § 206; Gow on Part., *35 note, 1 Am. Lead. Cases (Hare & Wallace, 1847), 337; 1 Lead. Cas. in Eq., (White & Tudor), (4th Am. Ed.,) 311, 297; Collyer on Part., (5th Am. Ed.), §§ 143, 135; 3 Kent's Com. (12th Ed.), 38, 39 and notes; Sigourney *v.* Munn, 7 Conn., 11; Smith *v.* Jackson, 2 Edw. Chan., 28; Coles *v.* Coles, 15 Johns, 159; Greene *v.* Greene, 1 Hammond, 535; Sumner *v.* Hampson, 8 Hammond, 328; 2 Lindley on Part., (4th Ed.), 668 to 672, 652, note 1.

In this case, moreover, there is in the articles of partnership an express provision against the dissolution of the partnership by the death of one of the partners. Such stipulations are valid and will be upheld: Gratz *v.* Bayard, 11 S. & R., 46; Laughlin *v.* Lorenz's Adm'rs, 12 Wright, 282; Scholefield *v.* Eichelberger, 7 Pet., 594; Burwell *v.* Mandeville, 2 How., 576; Story on Part., § 201.

Mr. Justice GREEN delivered the opinion of the court, April 28, 1884.

The decree made by the learned court below in this case merely ordered the payment of the sum of fifteen hundred dollars by the defendant to the plaintiff, as his full share of a dividend of profits declared in 1879. There was no decree of dissolution of the partnership asked for in the bill or made by the court; there was no final account nor any winding up of the affairs of the partnership. Of course there was no adjudication either of the status of the parties or of their respective rights to the property of the partnership, as upon a final settlement and distribution of the property and assets of the partnership. The money ordered to be paid was a share of a dividend of the current profits of the firm. The profits realized from the business were of course personal property in any aspect of the case. They represent, not the mere product of

real estate distinctively as such, but of a business, to wit, the manufacture and sale of pig iron. Such a business is perhaps quite as largely the result of a dealing with money and personal chattels as with real estate. In this case the furnace and lands occupied in conducting the business were owned by the members of the firm, and to the extent of their use they contributed to the general result of profits earned.

The partnership in which the parties plaintiff and defendants were interested, was a continuing one which commenced in 1852, and which has never yet been dissolved. No question as to the ultimate ownership of the real estate of the firm, after a dissolution has taken place, arises upon the present record. The articles of copartnership contained an express provision that the firm should not be dissolved by the death, withdrawal, failure or pleasure of any of its members, nor in any way but by the consent of all the members thereof. A method of continuing the partnership after the death of a member is also provided. That such stipulations are perfectly valid and binding cannot be doubted: Story on Part., §§ 196 to 201; Gratz v. Bayard, 11 S. & R., 46; Laughlin v. Lorenz, 12 Wr., 282, and authorities cited by Agnew, J., on p. 283.

In the present case, in addition to the provision for a continuance of the partnership after the death of a member, there is also a stipulation that the furnace and lands of the firm shall be held as personal property. In point of fact the real estate of the firm was acquired with partnership funds and used for partnership purposes. In every view of the case so far as any question which now arises is concerned, during the continuance of the partnership agreement, all the property of the firm must be regarded as personal estate. Certainly this must be so as to mere dividends of profits earned in carrying on the business. We cannot declare the partnership contract at an end, nor can we dissolve the firm, or deal with its assets as though it were dissolved, by any order which it would be possible for us to make in this proceeding. We have considered the very able argument of the learned counsel for the appellants with great care, but we are not convinced that it is applicable to the present situation in its leading points. The decision in Foster's Appeal, 24 P. F. Smith, 391, much relied upon for the appellants, is predicated of a dissolved firm, with all its debts paid, and a residuum of unconverted land remaining *in specie* for mere purposes of distribution. But there are no such facts here. It cannot now be known that the real estate will not be required for the payment of debts. The firm still continues its business under a lawful agreement to that effect. Whenever a dissolution shall be established, and a final settlement of accounts shall take place, the positions

9 Outerbridge.—33.

contended for, and the reasoning by which they are enforced, will become entirely applicable, and will exercise a very potent, and possibly a controlling influence, upon the questions which will then arise between the present litigants or those who may succeed them. But upon the present state of the record ; we think the appellee is clearly entitled to the dividend in question as the successor to his deceased wife's title.

Decree affirmed at the cost of the appellants.