George S. Gandy, Administrator of Harrison Robbins, deceased, *v.* Frederick S. Dickson et al., Appellants.

*Landlord and tenant—Distress after death of tenant.*

A landlord has no right to make a distress for rent after the death of the tenant. This rule is not affected by stipulations in the lease that goods should be liable for distress for thirty days after removal from the premises, and that the rights of the parties should extend to their heirs, executors, administrators and assigns.

Argued Jan. 14, 1895. Appeal, No. 68, July T., 1894, by defendants, from judgment of C. P. No. 4, Philadelphia Co., June T., 1892, No. 851, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Replevin for goods distrained for rent. Before ARNOLD, J.

At the trial, attorneys for plaintiffs and defendants agreed that if witnesses were called they would establish by their testimony the following, to wit: That Hugh S. Dickson died 17th October, 1887; that Harrison Robbins died 11th June, 1892; and that George S. Gandy was duly appointed administrator of decedent's goods and chattels. That on 24th July, 1892, one quarter-yearly installment of the rent, amounting to $1,450, of the demised premises, and issuing thereout, became due and payable by the terms of the said lease to the avowants.

That George S. Gandy, as administrator aforesaid, entered upon the demised premises, and within thirty days after the 24th of July, 1892, caused to be removed part of the goods therefrom, and into premises 924 Chestnut street, Philadelphia, and that most of the goods were so removed between the said

24th July, 1892, and 11th June, 1892, and that a small part of the goods levied on were on the demised premises at the time of the levy.

That the removal of the goods by the plaintiff as administrator from 916 Chestnut street was for the purpose of administering his decedent's estate by selling the goods, and with the proceeds, paying the decedent's debts.

That the distress warrant issued and was levied 12th August, 1892, on the goods so removed to 924 Chestnut street, and that their value was $1,500.

The lease between Frederick S. Dickson and Harrison Robbins was dated July 1, 1885.

At the first trial a verdict was rendered for defendants. This was set aside, (3 Dist. Reps. 411,) ARNOLD, J., filing the following opinion :

" Harrison Robbins was tenant of 916 Chestnut street, under a yearly lease, at $5,800 a year, payable quarterly on the 24th of January, April, July, and October. It was agreed in the lease that all goods on the premises, and for thirty days after removal therefrom, should be liable to distress for rent. Mr. Robbins died June 11, 1892, and letters of administration on his estate were granted to the plaintiff, who removed the goods from 916 to 924 Chestnut street, for the purpose of selling the same and applying the proceeds to the payment of the decedent's debts. A quarter's rent fell due on July 24, 1892, and on August 12, 1892, the landlords distrained therefor on the goods of the intestate at Nos. 916 and 924 Chestnut street, to the last of which places most of the goods had been removed between June 11 and July 24, 1892. The plaintiff thereupon commenced this action of replevin, and the question is whether the distress was lawful.

" The right of distress comes from the civil law, under which land that was let to a tenant was considered as hypothecated and held in pledge to pay the rent, and the whole profits arising from the land were liable to be sold for the payment and satisfaction of the rent: Gilbert on Rents, pages 3, 26, 92 ; Taylor on Landlord and Tenant, section 556. At the common law a distress for rent could not be made after the termination of the relation of landlord and tenant, which might happen by the death of either, and therefore the statute of

8 Anne, chap. 14 (1710), was passed, to give a remedy to the landlord, by enacting that his executor might distrain within six months after the termination of the lease, but *during the possession of the tenant from whom such arrears became due.* These italicized words were omitted from our Pennsylvania statute of March 21, 1772, which re-enacts the statute of Anne, probably because they were considered superfluous and merely declaratory of existing law: Clifford v. Beems, 3 Watts, 246. The English statute limits the right of the executor of a landlord to distrain to six months after his death, while the right of the executor to distrain under our statute is without limit as to the time when it may be exercised: Moss' Ap., 35 Pa. 162; Lewis's Ap., 66 Pa. 312. So much as to the right of the landlord to distrain.

"As to the liability to distraint, another question arises, and, notwithstanding the early decisions in England, the law may now be considered as well settled there that there is no right to distrain in a case like this. In Bradby on Distresses, 77, it is said that as a distress is in the nature of a remedy upon the land, if the tenant be dead the goods of the deceased remaining thereon may be distrained in the hands of his executor or administrator for rent accruing before and after his death. For this the author cites Bolton v. Canham, executor, Pollexfen, 125 (25 and 26 Car. II., A. D. 1675), which was not a proceeding on a distress, but an action against an executor for rent in arrear, and the dispute was over a question of priority in the distribution of the personal estate of a decedent. Another case cited by Bradby is Braithwaite v. Cooksey, 1 H. Blackstone, 465 (1790), decided *per curiam,* and without reasons assigned. On looking at the arguments in behalf of the successful landlords we find it based on three English statutes, neither of which, however, by express words or fair inference, confers a right on the landlord to distrain on the goods of a deceased tenant. Perhaps, however, the reason given by the court of appeals of New Jersey was the true reason of the old law. That court said that "under the old law it was a mere struggle among the creditors for priority, and the law was indifferent who succeeded:" Wood v. Hopkins, 1 Pennington, 692. In Turner v. Barnes, 2 Best & Smith, 110 E. C. L. 435 (1862), Braithwaite v. Cooksey was declared not to fur-

nish a precedent to be followed, and it was decided that when a tenant at will at a yearly rent died owing rent in arrear, and the day after his death the landlord distrained, the house being occupied by the lessee's servants, the distress was unlawful. A modern English writer (Foa on Landlord and Tenant, on page 408) well expresses the law when he says that the right to distrain after the death of the tenant must be limited to the case in which the personal representative becomes tenant under the lease in his testator's place, and the arrears distrained for have not actually fallen due until after the death.

" The question has been considered and decided in two cases in this state, in the first of which, Hoskins v. Houston, 2 Clark, 489 (1844), Judge LEWIS, in the common pleas, held that a landlord has no right to distrain for rent after the death of the tenant. Judge LEWIS' opinion is an elaborate dissertation upon the law on this subject, and he comes to the conclusion that since our acts of 1772, 1794, and 1834, providing for the distribution of a decedent's estate, no priority can be obtained by a distress levied after the death of a tenant. The other case is Stahlman's Est., 26 Pitts. L. J. 113 (1879), in which Judge HAWKINS, of the orphans' court of Allegheny county, issued an injunction to prevent a landlord from proceeding by a distress for rent after the death of the tenant.

" We have not overlooked the agreement in the lease in this case that the goods on the premises should be liable for rent for thirty days after their removal from the premises, but consider that this applies merely to a removal during the life of the tenant; nor the other agreement in the lease, that the rights and liabilities of either of the parties shall extend to the heirs, executors, administrators, successors, and assigns of such party. The tenant cannot, by any such agreements, deprive other parties of their right to have the personal estate of a decedent administered according to the statute of distributions without any preference other than those given by it.

" It is a rule without an exception, said Chief Justice GIBSON, in Pierce v. Scott, 4 W. & S. 344, that a landlord cannot distrain goods which are in the custody of the law; and Judge LOWRIE, in Mickle's Admr. v. Miles, 1 Grant, 320, said that the goods of a deceased lessee are not liable to distress. The act of February 24, 1834, which gives the landlord the second

preference in distribution would be neutralized if the landlord could by a distress obtain the first place as to goods on the demised premises.   There would be no necessity for giving the landlord a second preference as to such goods if he could by a distraint obtain a priority over all other creditors.   The insolvency of the deceased tenant makes no difference in the application of the law, which was intended principally for just such cases ; for if the estate were solvent the preferences would not consume the estate before all the creditors were paid.   In the language of Judge WOODWARD, in Moss's Ap., 35 Pa. 162, no attentive reader can doubt that the legislature meant to substitute the landlord's claim on the proceeds of an execution or administration for his right of distress.   As death brings administration, the same as judgment brings execution and levy, with their preferences and equalities, it is not in the power of parties to defeat the rights of creditors which are vested in them by law.   Upon the death of a tenant his personal estate is placed at once in the grasp of the law, and no creditor can obtain any advantage over another, either by distraint, execution, or agreement.

" The verdict in favor of the defendants being erroneous, it is therefore set aside and a new trial granted."

At the second trial, the court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff.   Defendant appealed.

*Errors assigned* were above instructions.

*E. Hunn Hanson* for appellants, cited : Act of Feb. 24, 1834, P. L. 84; Gratz v. Bayard, 11 S. & R. 41 ; Laughlin v. Lorenz, 48 Pa. 275 ; Leaf's Ap., 105 Pa. 505 ; Hopkins v. Houston, 2 Clark, 489 ; Mickle v. Miles, 1 Gr. 320 ; Stahlman's Est., 26 Pitts. L. J. 112 ; Wood v. Hopkins, 1 Pennington, 689 ; Turner v. Barnes, 2 Best & Smith, 435 ; Braithwaite v. Cooksey, 1 H. Bl. 465 ; Moss's Ap., 35 Pa. 162.

*John G. Johnson, Frank P. Prichard* with him, for appellee, cited : Act of February 24, 1834, sec. 35, P. L. 80.

OPINION BY MR. JUSTICE McCOLLUM, Feb. 25, 1895 :

We think the learned judge of the court below reached a

correct conclusion in this case and gave good reasons for it. The contention, briefly stated, concerns the right of the legal representatives of a deceased lessor to distrain for rent due, the goods and chattels of his deceased lessee in the hands of the administrator of the latter. They base their claim of a right so to do upon the lease which created the relation of landlord and tenant between the decedents, and by its terms extended to their respective "heirs, executors, administrators, successors and assigns," their respective rights and liabilities under it. The right of distress as defined by the lease was exercisable on the nonpayment at maturity of any quarter's rent, and included goods while on the premises and for thirty days after their removal therefrom. It is undisputed that the goods replevied in this case were distrained by the legal representatives of the lessor while in the custody and under the control of the administrator of the lessee, and the question to be decided is whether the distress was authorized by the provisions of the lease to which reference has been made. The distrainors have not brought to our notice any decision of this court which directly sustains their claim nor do we know of any. They have cited Gratz v. Bayard, 11 S. & R. 41; Laughlin v. Lorenz, 48 Pa. 275, and Leaf's Appeal, 105 Pa. 505, as analogous in principle to the case at bar. In the first case cited, it was held that by express agreement a partnership may continue after the death of one of the partners, and further, that upon the assignment by the survivor of the firm effects for the benefit of creditors, the whole partnership fund including what was contributed thereto by the deceased partner's estate, passed to the assignee and was applicable to the partnership debts. Laughlin v. Lorenz decided that the legal representatives of a deceased partner may carry on the business for, and bind the estate, where a covenant to that effect existed in the articles of copartnership, or he directed by will that it should be done. Leaf's Appeal recognized the validity of a stipulation in the copartnership articles for the continuance of the firm after the death of a member, and enforced the principle that during the continuance of it real estate constituting a part of the partnership fund must be regarded as personalty, subject, however, to the qualification that one partner cannot dispose of the firm interest in it, unless specially author-

ized to do so.  These cases acknowledge and sustain the power to create a partnership which may survive the death of one of its members.  The exercise of the power may postpone the recovery by the estate of the deceased partner of a possible asset ascertainable on the dissolution of the partnership and the liquidation of its affairs, and it may perhaps, diminish the same, but such asset when recovered is on the footing of other assets of the estate, as regards distribution among creditors. It is believed therefore that the cases cited do not govern the case at bar, nor afford material assistance in the decision of the question involved in it.  The distrainors had no lien on the goods, for rent, in the lifetime of the decedent, and at his death they passed to his administrator as other assets of the estate did.  His custody of them was lawful, and for the purposes of administration.  It was his duty to apply them to the payment of the decedent's debts in the order prescribed by the statute. In this order, funeral expenses, medicine furnished and medical attendance given during the last illness of the decedent, and servants' wages not exceeding one year, constitute the first class and have precedence ; rents not exceeding one year form the second class, and all other debts belong to the third class, " except debts due to the commonwealth which shall be last paid."  It is possible that the order thus prescribed may be qualified as to assets on which there are liens acquired in the lifetime of the decedent, but as no liens of this character appear in the case before us, the qualification suggested does not require present consideration.  Our conclusion is, that the distress of which this litigation is the outcome was not warranted by the lease, and was in plain violation of the laws governing the administration and distribution of the estates of decedents.

We do not consider it necessary to add anything further to what was well said by the learned judge of the court below in vindication of the judgment entered there.

Judgment affirmed.